**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **Merlin Hill,** | ) | **CASE NO. 1:08 CV 133** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **Elaine L. Chao, in her Official Capacity** | ) | **Memorandum of Opinion and Order** |
| **as the Secretary of the United States** | ) | |
| **Department of Labor,** | ) | |
| **Defendant.** | | |

### Introduction

This matter is before the Court upon defendant's Motion for Summary Judgment (Doc. 17). This case alleges a denial of a promotion based on race. For the following reasons, defendant' motion is GRANTED.

### Facts

Plaintiff, Merlin Hill, an African American male, filed this lawsuit against defendant, Elaine L. Chao, in her Official Capacity as the Secretary of the United States Department of Labor. The Complaint alleges that plaintiff was denied a position based on his race.

Plaintiff began working for the Department of Labor (DOL) in a GS-12 senior claims

position in 2001 in Cleveland, Ohio.  Plaintiff was promoted one month later to a GS-13 claims manager position in Cleveland.  In April 2006, plaintiff was moved to the position of Supervisory Workers' Compensation Claims Examiner in the Cleveland Final Adjudication Branch (FAB) office.  LuAnne Kressley, the FAB chief, was his immediate supervisor.  Plaintiff remained in that position until he was reassigned in December 2007 to his current position of claims manager for Unit A in the district office.  (pltf. depo. 98-99, 101, 123-131, 138-140; LuAnne Kressley aff.)

The mission of DOL's Division of Energy Employees Occupational Illness Compensation is to administer the benefits provisions of the Energy Employees Occupational Illness Compensation Program Act of 2000 (the Act). The Act provides compensation and medical benefits for covered workers who sustain certain employment related illnesses as a result of exposure to beryllium, ionizing radiation and other hazards unique to nuclear weapons productions and testing. Initial adjudication is performed in the district office. The FAB makes all final decisions.  (pltf. depo. Ex. 3)

The DOL posted an announcement, for the open period of September 18, 2006 through October 2, 2006, stating a vacancy for the position of Supervisory Workers' Compensation Claims Examiner in Jacksonville, Florida.  (Doc. 18 Ex. 2) A second announcement was posted for the same position with an open period of November 15, 2006 through November 29, 2006.  (*Id.* Ex. 3) Plaintiff applied to both postings.  (pltf. depo. 146, 152, 154) Kressley was the selecting official for the position.  She cancelled the two postings because they failed to attract a sufficient number of applicants.  (Kressley aff.)  A third announcement for the position, Announcement Number ESA-EE-07 32-MS, was posted with

2

an open period of December 5, 2006 through December 19, 2006. (Doc. 18 Ex. 5) Plaintiff again applied. (pltf. depo. 144, 157) Plaintiff and five other candidates appeared on the Certificate of Eligibles.[1] (*Id.* Ex. 6; Kressley aff.) Mark Stewart, a Caucasian male, was selected for the position. (*Id.*) The decision was made around February 2007. (pltf. depo. Ex. 6)

Announcement Number ESA-EE-07 32-MS described the major duties of the position to include: The employee would serve as the District Manager of the FAB in Jacksonville, Florida. He would supervise the FAB staff in the office consisting of six to twelve claims examiners at the GS-11 and GS-12 level, and five to seven Hearing Representatives at the GS-13 level and clerical support staff. He would select and promote personnel within the Branch. He would review transcripts and the resulting hearing decisions of subordinate hearing examiners in all cases in which oral hearings are conducted; review, where requested, decisions; and refer cases involving unique circumstances which could potentially alter present program policy, to the Director or Deputy Director with recommendations and requests for policy decisions and or legal interpretations from the Office of the Solicitor. He would maintain effective relations with a variety of high-level officials and other federal agencies and Members of Congress. Qualifications of the position included exceptional analytical skills to access complex, unique, or novel information presented in hearings or filings regarding eligibility for problem benefits, and to ensure the appropriate application of

---

[1] The Certificate of Eligibles is a listing of the names of the best qualified candidates, in alphabetical order, resulting from competitive procedures who are entitled to consideration for selection for the vacancy by the selecting official. (*See* Doc. 17 at 3)

statute, regulations and policy to the facts of each claim.  The position required that the selectee demonstrate experience in supervising a staff comprised of claims examiners or adjudicators, hearing officers and/or appeal reviewers for a benefit payment program with a large caseload and demanding deadlines for the issuance of decisions.  Finally, the selectee would be required to write clearly, concisely and in an organized manner.  (Doc. 18 Ex. 5)

Kressley avers that she made her decision after reviewing the candidates' application documents and resumes.  She also interviewed all of the candidates provided on the Certificate of Eligibles, and considered her own experience with the candidates who had all reported directly to her.  Kressley's reasons for selecting Stewart and not selecting plaintiff will be discussed below.  (Kressley aff.)

After exhausting his administrative remedies, plaintiff filed this Complaint asserting one cause of action alleging a Title VII violation.  Plaintiff alleges that he was denied the position based on race.  This matter is now before the Court upon defendant's Motion for Summary Judgment.

**Standard of Review**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file,

4

>together with affidavits," if any, which it believes demonstrates
>the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)). A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. Federal Rule of Civil Procedure 56(e) provides:

>When a motion for summary judgment is made and supported
>as provided in this rule, an adverse party may not rest upon the
>mere allegations or denials of [his] pleadings, but [his
>response], by affidavits or as otherwise provided in this rule,
>must set forth specific facts showing that there is genuine issue
>for trial. If he does not respond, summary judgment, if
>appropriate, shall be entered against him.

The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citation omitted); *see also United States v. Hodges X-Ray, Inc.,* 759 F.2d 557, 562 (6th Cir. 1985). However, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox*, 53 F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 52 (1986)). Moreover, if the

evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted).

### **Discussion**

The familiar *McDonnell Douglas* burden-shifting analysis is applied to plaintiff's Title VII race discrimination claim. Initially, plaintiff must establish a prima facie case of racial discrimination. Next, if plaintiff satisfies such a showing, defendant has the burden to articulate a legitimate, nondiscriminatory reason for not selecting him. Finally, if the defendant has stated such a reason, plaintiff has the burden to show that it is a pretext for unlawful racial discrimination. The latter can be shown by demonstrating that the proffered reason (1) has no basis in fact, (2) did not actually motivate the challenged conduct, or (3) was insufficient to warrant the challenged conduct. *Campbell v. University of Akron,* 211 Fed.Appx. 333 (6th Cir. 2006) (citations omitted).

To establish a prima facie claim of discrimination based on failure to promote, plaintiff must show that (1) he is a member of a protected class; (2) he applied and was qualified for the promotion; (3) he was considered for and denied the promotion; and (4) another employee of similar qualifications who was not a member of the protected class received the promotion. *Burks v. Yellow Transp., Inc*., 258 Fed.Appx. 867 (6th Cir. 2008).

Initially, defendant asserted that plaintiff cannot establish a prima facie case. In its reply, defendant concedes that plaintiff has satisfied the prima facie showing. Therefore, pretext is the only issue before this Court.

Defendant submits Kressley's affidavit wherein she avers the following.

Plaintiff was not selected for the position because during the ten months that plaintiff

worked as Supervisory Workers' Compensation Claims Examiner in the Cleveland FAB office with Kressley as his immediate supervisor, plaintiff had demonstrated a resistence to national office oversight and a view that his office was not bound by the same rules that applied to other FAB offices. When Kressley brought issues before plaintiff, he responded to her or to the assistant branch chiefs with lengthy e-mail diatribes or loud, belligerent telephone calls, and  accepted little or no responsibility for his mistakes or those of his staff. While the Cleveland FAB office under plaintiff's supervision improved its timeliness performance, as a manager within the FAB management structure plaintiff was not a team player.  Although he had been with the program for five years, on a number of occasions he demonstrated less than a proficient level of knowledge of the Act, regulations and procedures applied by the FAB in reviewing cases.  In response to Kressley's interview question regarding the reason for wanting the position, plaintiff stated that it was a career advancement opportunity, he wanted to relocate to warmer weather and he believed he was capable of resolving the problems in the Jacksonville office because he could motivate people to get the work done.

     Stewart, on the other hand, was selected because Kressley believed that he best satisfied the requirements she sought for the Jacksonville office.  Due to very recent changes in that office, Kressley believed that it was important to have a manager who was known and respected by the staff; who had exceptional knowledge of the applicable law, regulations and procedures; and who had demonstrated through his tenure with the FAB that he/she was a team player who worked well with staff and other managers. Kressley believed that Stewart best fulfilled these requisites. Stewart was selected because, although he had less formal

7

supervisory experience than plaintiff, during his five years with the Jacksonville FAB office as a hearing representative, Stewart had established himself as a respected leader, who provided daily mentoring to other staff and produced large numbers of high quality decisions. He served as a learned resource on the applicable law, regulations and procedures, and had served as acting manager on many occasions. As a member of the pertinent training team, Stewart had demonstrated substantive knowledge of the program, and was shown to be a leader and team player. The existing FAB Jacksonville office manager was relieved of her supervisory duties in October 2006, and Stewart served as acting manager during a two month period. During that time, Stewart implemented changes in the management of the office that were not always popular with the staff, but were necessary to get the office back on track. He was very successful in getting the office back to a high level of performance. In response to Kressley's interview question regarding the reason for wanting to be manager of the Jacksonville office, Stewart stated that the office needed someone who understands the problems in that office and knows the staff well enough to gauge the strengths and weaknesses of the staff and work with them to a successful outcome. Stewart stated that he believed that his five years in the office provided him with the knowledge and experience to succeed.

According to Kressley, there were five very qualified candidates on the Certificate of Eligibles. She chose Stewart after consulting with three assistant branch chiefs who were familiar with both plaintiff and Stewart. (Kressley aff.)

Plaintiff asserts that the evidence shows that Kressley's asserted reasons are not believable or have no basis in fact. Plaintiff submits his performance appraisal for the period

8

of June 14, 2006 through September 30, 2006. Kressley, who signed the appraisal on October 24, 2006, was the rating official. The appraisal is also signed by a reviewing official. (Doc. 18 Ex. 1) Plaintiff points out the following. Despite Kressley's averment that plaintiff was resistant to national office oversight and did not feel he was bound by the rules that governed other FAB offices, the performance appraisal states that under plaintiff's leadership the Cleveland office "enjoys labor/ management harmony." While Kressley's affidavit notes that plaintiff does not accept responsibility for his mistakes, the appraisal states that plaintiff "has shown a willingness to learn from his mistakes as he becomes more familiar with this new territory." Kressley avers that plaintiff is not a team player. Yet, the appraisal gives plaintiff an "exceed" for "coalition building and communication." It also states that plaintiff "promotes an open, communicative environment, "encourages mentoring" among his staff and resolves workplace disputes promptly, fairly and effectively. Kressley avers that plaintiff does not have proficient knowledge of the relevant laws and procedures, but the appraisal states that under plaintiff's leadership the office has "timely and well-written decisions." It also states that plaintiff has "made substantial progress in learning FAB procedures and operations."

Defendant argues that plaintiff was not the best qualified candidate and Stewart was better qualified based on his past performance. On this basis, defendant asserts that plaintiff has not established that Kressley's reasons are pretextual. For the following reasons, this Court agrees.

Defendant submits Stewart's performance appraisal for the period between October

2005 and September 2006.[2] The appraisal is signed by a rating official and Kressley, who is the reviewing official.  While plaintiff received an overall performance and appraisal rating of "highly effective," Stewart received the higher overall rating of "exemplary." (Doc. 19 Ex. 1) Exemplary is defined as exceeding standards for all elements.  Highly effective is defined as exceeding standards for 50% or more elements but not all, and meeting standards in the remaining elements.

Stewart's appraisal is consistent with Kressley's averments as to his superior qualifications.  For example, Kressley avers that as a hearing representative Stewart has provided daily mentoring to staff and produced large numbers of high quality decisions.  His appraisal gives an "exceeds" for "mentorship/technical expert" and notes that Stewart is an "excellent mentor." He received an "exceeds" for "quality work product."

More importantly, however, Kressley's affidavit makes clear that the Jacksonville office had special needs due to recent changes and she was looking for a candidate who satisfied the requirements to meet those needs. As stated in her affidavit, Stewart had taken over for the existing Jacksonville manager in October 2006 and served as acting manager during a two month period. Kressley's affidavit identifies Stewart's success during that period.  This period was not covered in his appraisal, but was the period immediately prior to

---

[2]     Plaintiff asserts that Stewart's appraisal which is entitled, Performance Management Plan for Non-Managers and Non-Supervisors, is not germane because plaintiff's appraisal is entitled, Performance Management Plan for Managers and Supervisors.  Apparently, plaintiff believes Stewart's appraisal is irrelevant inasmuch as the position in question was a supervisory position and plaintiff was a supervisor while Stewart was not.  This Court disagrees as the appraisals rate the employees' performance for roughly the same period.  Moreover, Kressley's affidavit acknowledges that Stewart had "less formal supervisory experience" than plaintiff.

10

Kressley's decision to select Stewart for the position. Obviously, Kressely took into account Stewart's understanding of the problems in the Jacksonville office, as well as his knowledge of the staff. Additionally, Stewart's five years in the office in a non-supervisory position would justifiably be viewed as providing him with the knowledge and experience needed to succeed there.

Plaintiff asserts that his appraisal contradicts Kressley's affidavit and, therefore, creates an issue of fact as to pretext. This Court disagrees.

Kressley avers that as Cleveland Supervisory Workers' Compensation Claims Examiner plaintiff had shown a resistence to national office oversight and to be bound by the same rules that applied to other FAB offices, and that plaintiff did not respond well when confronted. Consistent with this averment, plaintiff received a rating of only "meets" (on a scale of exceeds, meets, needs to improve and fail) for the category of "assists the FAB chief in developing and refining policy and procedures that have impact on the FAB." Kressley was the FAB chief. Additionally, an October 2006 e-mail exchange between plaintiff and Kressley gives credence to Kressley's averment. (pltf. depo. Ex. 10) Kressley e-mailed plaintiff stating that he had not submitted a self-appraisal which Kressley had requested a month earlier of all FAB managers. Plaintiff responded with a lengthy e-mail as to why he felt that he did not have to submit the self-appraisal. Plaintiff wrote in part:

> I am not attempting to be trite by saying this but in all honesty I have had quite a bit on my plate becoming acquainted with the many fine differences between managing a work unit from the D.O. side verses managing one from the FAB side. I have expended a significant amount of effort keeping my head above water as I learn the job as well as keep up with the day to day operation of the office. What I am trying to say is that so much of my time has been utilized making sure that this office does not fall behind that I have not had time to really take note of any significant accomplishments which might be attributed to me.

11

> \*\*\*
>
> ... My only concern is getting the job done here, and I have not really been keeping score to the point where I can toot my own horn, or pat myself on the back about how good a job I am doing. In all sincerity I trust that as far as my evaluation goes, you will be fair with me, just as I have attempted to be fair with my staff.

(*Id.*) Kressley also avers that plaintiff was not a team player as a manager within the FAB management structure, and did not display a proficient level of knowledge of the pertinent statutes, regulations and procedures. Plaintiff's appraisal shows that he was a team player within the office. The appraisal states, for example, that he "has been very successful in promoting staff morale..." But, the appraisal gives plaintiff only a "meets" for assisting "the FAB chief in developing and refining policy and procedures that have impact on the FAB." Further, the appraisal does seem to indicate some concern with knowledge of procedures. Plaintiff received only a "meets" rating for "problem solving and initiative." With regard to this category, the appraisal states that during his brief tenure as manager, plaintiff "has made substantial progress in learning FAB procedures and operations. He has shown a willingness to learn from his mistakes as he becomes more familiar with this new territory." This seems to exemplify that there is need for improvement. Consistent with this evaluation, at one point Kressley had e-mailed plaintiff regarding applicable survivorship provisions which plaintiff's staff did not understand. (pltf. depo. Ex. 8) Stewart, on the other hand, received an "exceeds" for quality of his work product which included using "the most current guidelines put into operation by the Branch of Policies and Procedures," and "applicable statutory or regulatory citations."

Additionally, plaintiff's appraisal covered the period between June and September 2006. Yet, Kressley's affidavit refers to the ten months that plaintiff had been a supervisor

reporting to her. Plaintiff testified that he became a supervisor in April 2006. Thus, Kressley refers to the period between April 2006 and January 2007. Her decision was made in February 2007. Thus, the appraisal did not cover the entire period for which Kressley based her opinion of plaintiff.

Moreover, Kressley averred that she also relied on the applicants' interviews in making her decision. Stewart's response to Kressley's interview question as to why he wanted the position could certainly be viewed by Kressley as more favorable than plaintiff's response. While plaintiff responded that it was a career advancement opportunity, he wanted to relocate to warmer weather and he believed he was capable of resolving the problems in the Jacksonville office because he could motivate people to get the work done, Stewart stated that the office needed someone who understood its problems, knew its staff and had experience working there.

Finally, plaintiff has alleged that Stewart was selected although he did not even bid for the position in the two previous postings. He seems to implicate that Kressley re-posted the position in order to give Stewart the opportunity to apply. Kressley avers that the first two postings were canceled for insufficient number of applicants. There is no evidence that the procedure was somehow improperly manipulated so that Stewart could be given an unfair advantage.

For these reasons, summary judgment is warranted on plaintiff's claim of race discrimination.

**Conclusion**

For the foregoing reasons, defendant's Motion for Summary Judgment is granted.

IT IS SO ORDERED.

                                        /s/ Patricia A. Gaughan
                                        PATRICIA A. GAUGHAN
                                        United States District Judge

Dated: 12/9/08